## CENTRAL BANK & TRUST CORPORATION, receiver, *v.* ALMAND.

Under the evidence, no question arose as to a partial invalidity of the deed given by the defendant in error. The jury was authorized to find it void in toto, because given by a married woman in pursuance of a scheme whereby she pledged her individual property as security for the debts of others.

OCTOBER 12, 1910.

Equitable petition. Before Judge Pendleton. Fulton superior court. January 27, 1910.

*Candlers, Thomson & Hirsch* and *R. L. D. McAllister*, for plaintiff in error. *Jones & Seligman* and *L. Z. Rosser*, contra.

HOLDEN, J. The petition of the defendant in error, filed in the court below, made substantially the following allegations: Her husband and E. H. Thornton, the president of the Neal Bank, in August, 1904, began making plans to form a corporation to do a mercantile business of a specified nature, and the money with which to begin business was to be advanced by the bank. In September, 1904, application was made for a charter by her husband, J. G. St. Amand, and E. E. Thornton, the son of E. H. Thornton. Her husband made a trip for the purpose of buying goods with which to begin business, and took with him a letter of which the following is a copy: "E. H. Thornton, Pres. W. F. Manry, Cashier. H. C. Caldwell, Asst. Cashier. Neal Loan and Banking Co. Prudential Bld. Broad & Walton Sts., Atlanta, Ga., Aug. 6, 1904. To whom it may concern. Our Mr. E. H. Thornton holds in trust ten thousand ($10,000.00) dollars to be used by the stockholders in paying for the stock subscribed by them in the Almand Hat Co., a corporation, for which a charter will be granted within the next thirty days. Very respectfully, E. H. Thornton, President." He bought goods amounting to several thousand dollars, and drew checks to pay for the same on the Neal Bank; and the checks were duly paid. The bank had no money paid in by either of the parties at the time the above letter was written, or at the time the goods were purchased, or the checks paid. The sum referred to in the letter "was in reality only a loan" from the bank "to said parties or to said prospective corporation." Upon the return of her husband, the president of the bank told him that he would have nothing further to do with the matter, and demanded that the loan already advanced and to be

advanced by the bank be secured, and said that no further advances would be made until this was done. The president of the bank stated that the real estate of the plaintiff "could be made security for the said debt by making a transfer of the same" to the corporation upon its organization and having the latter "issue bonds thereon, which bonds should be placed with the said Neal Bank as security for said loan." Petitioner "was induced and persuaded to make a transfer of said real estate for the purpose of securing the repayment to the said Neal Bank of the said $10,000." The deed making said transfer recited a consideration of $10,000, but plaintiff received no consideration for the deed. The deed was "merely a colorable scheme by which her separate estate was made surety" for the debt, with the full knowledge of the president of the bank and other parties interested. The corporation, through its officers, executed a trust deed to the real estate to J. M. Dugger as trustee, to secure an issue of ten $1,000 bonds, which were placed in the hands of the bank to secure the payment of said indebtedness of $10,000, and the same are now in the hands of the Central Bank and Trust Corporation as receiver of the Neal Bank. About 98 shares of the stock of the corporation had been issued to her, "presumably in payment of her transfer of said property." The deed was not made for the purpose of purchasing the stock, and she had never seen the stock. The receiver of the Neal Bank has secured a judgment against the corporation in a suit upon a note given by it for a certain indebtedness of $10,000 principal. Such judgment is about to be levied upon the real estate decded by her as above stated, and the bonds issued by the corporation are about to be sold by the receiver for the purpose of satisfying the judgment. She prays that the receiver, the trustee, and the corporation be enjoined from altering "the present status of the judgment, trust deed, bonds, or real estate," and that she have a decree requiring the parties named to surrender up and cancel the deed executed by her to the corporation and the deed executed by the corporation to secure the bonds, and the bonds issued by the corporation; and that she have a decree of the court that the title of the property is in her, free of all liens or interests of any of the parties named. The jury upon the trial of the case rendered a verdict in favor of the plaintiff, and to the order of the court overruling a motion for a new trial the receiver excepted.

The evidence introduced by the plaintiff in the case, if believed by the jury, was sufficient to sustain the material allegations of the petition and the main contentions of the plaintiff, and to authorize the jury to find that the deed was made by the wife to the corporation for the purpose of enabling it to make the trust deed and thereby secure the amount already advanced by the Neal Bank, and the amount to be thereafter advanced, with the knowledge of this purpose on the part of the bank, and that there was no bona fide purchase by her with the real estate of any shares of stock in the corporation. One of the main contentions of the plaintiff in error is that the jury would have been authorized to find that the deed made by the wife to the corporation was void only in so far as it secured the amount which at that time had been advanced by the bank to the corporation, and that it was valid with respect to the amount advanced by the bank after its execution. Complaint was made that it was error for the court to refuse written requests to charge the jury, the effect of which was to instruct them that they would be authorized to find in accordance with the theory above stated, and in charging the jury that their verdict should be either for the plaintiff, or for the defendant, thereby prohibiting the jury from making a finding of this character. The substance of a part of the evidence was as follows: After the bank had written the letter set out in the statement of facts and had cashed checks to pay for goods to the amount of several thousand dollars, and the president of the bank said that he would have nothing more to do with the matter, he suggested that the plaintiff's husband would have to get his wife to give him a mortgage on her real estate. The counsel for the president of the bank told him that she could not give a legal mortgage on her property for the security of the claim; whereupon the president replied "I have got to fix it up some way or other." The counsel then said, "There aint but one way on earth that I see how it would be possible for you to do this, and that would be to prevail on Mrs. Almand to make a deed to the Almand Hat Co., and then let the Almand Hat Co. transfer the deed to the bank, or to a trustee, to secure this money." The president then said, "Well, any way to get it fixed." Referring to the letter written by the president of the bank in which the $10,000 was referred to, the counsel told him, "You can't go back on that

paper. That is just equivalent to their having the money in the bank." The president then said, "If.he secures this debt by giving me this—getting his wife to give us this paper, then I will advance as much money as the business justifies." The wife then signed the deed conveying her property to the corporation. After the plaintiff made a deed to her property to the corporation; a certificate for 98 shares of its stock, of the par value of $100 each, was issued in her name. This certificate was signed by her husband as president of the corporation and placed in the safe in the office of the corporation. One share was issued to her husband and another to St. Amand. They paid nothing for these shares, and they were issued in order that they might be officers of the corporation. After the bonds amounting to $10,000 were issued by the corporation, and a deed to the real estate made by the corporation to a trustee to secure the bonds, the latter were placed with the bank as security for the several thousand dollars due the bank for checks paid by it prior to the organization of the corporation and for the amount subsequently advanced to it by the bank, making a total of $10,000 due the bank secured by the bonds. The evidence was such as to require the jury to find that the deed was a valid and subsisting instrument in all respects, or else that it was void in toto; and we do not think the court committed any error in giving the charge complained of, or in refusing to give the charges requested, which were based on the theory of a partial invalidity of the deed. The other charges requested, in so far as they were legal and pertinent, were fully covered by the general charge. Complaint is also made that the court erred in allowing, over the objection of the plaintiff in error, the defendant in error to introduce in evidence the letter written by the president of the bank, a copy of which appears in the statement of facts. This letter was properly admitted in evidence. It was admissible to show the course of dealing between the parties in connection with the entire transaction, and to illustrate the question as to whether at the time of the execution of the deed the bank had knowledge that it was given in pursuance of a scheme whereby the plaintiff became a surety for the debts of others. The court committed no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Lumpkin, J., disqualified.*