### JUKES *v.* HULL *et al.*

GILBERT, J. 1. The evidence, construed in the light most favorable to the claimant, Mrs. Hull, was insufficient to authorize the finding that the release was signed by her to be delivered to Mrs. Jukes on condition only that the remaindermen also signed. Her evidence shows merely that she believed the release would be ineffectual without the signatures of the remaindermen, and that she did not believe they would sign. This requires a reversal of the judgment refusing to grant a new trial.

2. The court did not err in overruling the demurrer to the plaintiff's amendment to the issue tendered.

3. The remaining assignments of error in the main bill and the cross-bill of exceptions are insufficient to cause a reversal.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*

Nos. 2087, 2089. FEBRUARY 18, 1921.

Claim. Before Judge Green (of the city court of Athens). Clarke superior court. May 14, 1920.

A fi. fa. for five hundred dollars principal, issued in favor of Nancy A. Jukes against J. T. Anderson as executor of T. C. Deloney, was levied upon described land as the property of the estate of T. C. Deloney, deceased. A claim to the property was interposed by Mrs. Rosa D. Hull, Rosa Hull Carson, and Leila May, Henry, and Deloney Hull. It appears that T. C. Deloney was the brother of Mrs. Rosa D. Hull; that under the will of their mother Deloney had a life-interest in the property levied upon, and that in the event he died without children Mrs. Hull would take a life-interest, with remainder to her children, who are the other persons named as claimants in this case. By amendment to the issue tendered the plaintiff in fi. fa. pleaded that the property had been acquired by Deloney with the belief that it would belong to him absolutely; that he had contributed from his individual funds a portion of the purchase-price and had expended considerable labor on the place before being informed that the claimants in this case would claim an interest in remainder; that subsequently Mrs. Hull had on divers occasions promised that she and her children would quitclaim to

him their interest in the land, and upon the faith of this promise he had expended $3600 in improving the place; that in equity and good conscience the estate of T. C. Deloney should have such interest in the land as would represent the enhancement in the value due to the improvements placed thereon by him; that this amount should be ascertained and subjected to the plaintiff's debt; that Mrs. Hull was estopped from claiming her life-interest in the land, because she had executed a contract which recited that it was made between the persons [naming them] who are claimants in this case and Mrs. Jukes, for the purpose of enabling T. C. Deloney to borrow money upon the security of said land, containing the following language: "The said parties of the first part [Mrs. Hull and the other claimants] each for himself or herself hereby releases to the said Nancy A. Jukes all his or her interest in the tract of land hereinafter described to the extent of the $1500.00 to be loaned by the said Nancy A. Jukes, and consent for the said T. C. Deloney to make title to the said Nancy A. Jukes to secure a note for $1500.00 principal, due twelve months after date, with interest at 8%, to the following land," describing it. This instrument was signed by Mrs. Rosa D. Hull alone. Deloney made to Mrs. Jukes a security deed conveying the land. Claimants allege that it was contemplated by plaintiff in fi. fa., at the time of the execution of the paper relied upon, that all of the children of Mrs. Hull should sign the same; that she signed the same "only with the agreement with the representative of the plaintiff in fi. fa., that if her children did not also sign, said instrument was to be void and of no effect;" that the amount of money loaned is different from that stated in the instrument relied on, and the loan was not made upon the faith of the signing of that paper; and that the signing of the paper by Mrs. Hull was an act of suretyship on her part, and the loaning without her knowledge or consent of an amount different from that stipulated in the writing constituted such a novation as would relieve her from liability. The evidence relating to the question whether Mrs. Hull executed the release upon the condition that it should be signed also by the remaindermen was as follows: Mrs. Hull testified, in substance, that J. T. Anderson presented the paper and urged her to sign it; that she stated to him, "I will sign the paper, but it won't do any good.; I am afraid my children will not sign the paper;" that he requested her to sign it, and stated that he would·

then see if he could procure the signature of the only one of her children present; that this child refused to sign; that he led her [Mrs. Hull] " to believe it wouldn't do any good without the children signing it;" that he told her " it was no good." In answer to the question, " Was anything said by Mrs. Hull at the time of signing that paper, if others didn't sign, for you not to deliver that: it would not be binding on her? " Anderson replied, " Why, of course that applied to her. Mr. Strickland wanted Mrs. Hull's signature, and he wanted the children's signatures; and when I acquainted her with the fact that we wanted to get Tom this money, she said she would write to the children, and I think probably she did, or any way told me she had written to the children, and there was one she stated to me that was unwilling to sign it." He also testified, that Mrs. Hull did not tell him that he should not deliver the paper until it had been signed by all her children; that he stated to her that while they desired the signatures of her children, the attorney representing Mrs. Jukes had informed him " that it would be all right just for her to sign it," and that the amount to be loaned would be reduced from fifteen hundred to five hundred dollars in consequence of the failure of the children to sign.

The jury found the issue in favor of the claimant, Mrs. Hull. A motion for new trial, filed by the plaintiff in fi. fa., was overruled; and she excepted to that ruling, in the main bill of exceptions. In the cross-bill of exceptions error is assigned upon the overruling of a demurrer to the amended issue tendered by plaintiff in fi. fa., upon the admission of certain evidence, and upon a portion of the charge of the court.

*John J. Strickland* and *Wolver M. Smith,* for plaintiff.

*Erwin, Erwin & Nix,* contra.